No. 15-3740

In The
# United States Court Of Appeals
## For The Seventh Circuit

Carol Chesemore, et al.,
Plaintiffs,

v.

David B. Fenkell,
Defendant-Appellant,

and

Alliance Holdings, Inc., et al.,
Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Wisconsin,
Case No. 3:09-cv-00413-wmc
The Honorable William J. Conley, Presiding.

**BRIEF OF DEFENDANTS-APPELLEES ALLIANCE
HOLDINGS, INC., A.H.I., INC., AH TRANSITION
CORPORATION,  AND ALLIANCE HOLDINGS, INC.
EMPLOYEE STOCK OWNERSHIP PLAN**

Charles C. Jackson
William J. Delany
Erin E. McAdams
Morgan, Lewis & Bockius LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
313.324.1000


Attorneys for Alliance Holdings,
Inc., A.H.I., Inc., and AH
Transition Corporation

Lars C. Golumbic
Sarah M. Adams
Groom Law Group
1701 Pennsylvania Avenue N.W.,
Ste. 1200
Washington, DC 20006-0000
202.861.6615


Attorneys for Alliance Holdings, Inc.
Employee Stock Ownership Plan

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>15-3740</u>

Short Caption: <u>Carol Chesemore v. David B. Fenkell v. Alliance Holdings, Inc.,</u>

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ]  PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Defendants-Appellees Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corporation</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Morgan, Lewis & Bockius LLP</u>
<u>Squire Patton Boggs (previously Squire, Sanders & Dempsey LLP)</u>

(3) If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

<u>Alliance Holdings Inc. Employee Stock Ownership Plan (and its wholly owned entities) mostly or wholly own Alliance Holdings, Inc. and AH Transition Corporation. Alliance Holdings, Inc. wholly owns A.H.I., Inc.</u>

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>No publicly held company owns 10% or more of Defendants-Appellees Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corporation's stock</u>

Attorney's Signature:     <u>s/ Charles C. Jackson</u>                    Date:     <u>March 31, 2016</u>

Attorney's Printed Name:   <u>Charles C. Jackson</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes**   <u>X</u>   **No** <u>      </u>

Address:   <u>Morgan, Lewis & Bockius LLP, 77 West Wacker Drive, Fifth Floor, Chicago, IL  60601</u>

Phone Number: <u>312.324.1000</u>                    Fax Number: <u>312.324.1001</u>

E-Mail Address: <u>charles.jackson@morganlewis.com</u>

i

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>15-3740</u>

Short Caption: <u>Carol Chesemore v. David B. Fenkell v. Alliance Holdings, Inc.,</u>

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ]  PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(4)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Defendants-Appellees Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corporation</u>

(5)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Morgan, Lewis & Bockius LLP</u>
<u>Squire Patton Boggs (previously Squire, Sanders & Dempsey LLP)</u>

(6)  If the party or amicus is a corporation:

   iii)  Identify all its parent corporations, if any; and

<u>Alliance Holdings Inc. Employee Stock Ownership Plan (and its wholly owned entities) mostly or wholly own Alliance Holdings, Inc. and AH Transition Corporation. Alliance Holdings, Inc. wholly owns A.H.I., Inc.</u>

   iv)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>No publicly held company owns 10% or more of Defendants-Appellees Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corporation's stock</u>

Attorney's Signature:   <u>s/ William J. Delany</u>     Date:  <u>March 31, 2016</u>

Attorney's Printed Name: <u>William J. Delany</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** <u>   </u> **No** <u> X </u>

Address:  <u>Morgan, Lewis & Bockius LLP, 1111 Pennsylvania Avenue, NW, Washington, D.C. 20004</u>

Phone Number: <u>202.739.3000</u>     Fax Number: <u>202.739.3001</u>

E-Mail Address: <u>william.delany@morganlewis.com</u>

Appellate Court No: <u>15-3740</u>

Short Caption: <u>Carol Chesemore v. David B. Fenkell v. Alliance Holdings, Inc.,</u>

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

### [ ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(7)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Defendants-Appellees Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corporation</u>

(8)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Morgan, Lewis & Bockius LLP</u>
<u>Squire Patton Boggs (previously Squire, Sanders & Dempsey LLP)</u>

(9)  If the party or amicus is a corporation:

   v)   Identify all its parent corporations, if any; and

<u>Alliance Holdings Inc. Employee Stock Ownership Plan (and its wholly owned entities) mostly or wholly own Alliance Holdings, Inc. and AH Transition Corporation. Alliance Holdings, Inc. wholly owns A.H.I., Inc.</u>

   vi)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

<u>No publicly held company owns 10% or more of Defendants-Appellees Alliance Holdings, Inc., A.H.I., Inc., and AH Transition Corporation's stock</u>

Attorney's Signature:    <u>s/ Erin E. McAdams</u>        Date:    <u>March 31, 2016</u>

Attorney's Printed Name:  <u>Erin E. McAdams</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ____ **No** _X_

Address:   <u>Morgan, Lewis & Bockius LLP, 77 West Wacker Drive, Fifth Floor, Chicago, IL  60601</u>

Phone Number: <u>312.324.1000</u>        Fax Number: <u>312.324.1001</u>

E-Mail Address: <u>erin.mcadams@morganlewis.com</u>

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>15-3740</u>

Short Caption: <u>Carol Chesemore v. David B. Fenkell v. Alliance Holdings, Inc.,</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

### [√]  PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

   <u>Alliance Holding, Inc. Employee Stock Ownership Plan, nominal Defendant-Appellee</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   <u>Groom Law Group, Chartered</u>

   <u>Squire Patton Boggs (previously Squire, Sanders & Dempsey LLP)</u>

(3)  If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

   <u>N/A</u>

   ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

   <u>N/A</u>

Attorney's Signature: <u>   s/ Lars C. Golumbic   </u>     Date:  <u>March 31, 2016</u>

Attorney's Printed Name: <u>Lars C. Golumbic</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes**  <u>  X  </u>  **No** <u>     </u>

Address:  <u>Groom Law Group, Chartered</u>

     <u>1701 Pennsylvania Ave., NW, Washington, D.C.  20006</u>

Phone Number: <u>(202) 861-6615</u>     Fax Number: <u>(202) 659-4503</u>

E-Mail Address: <u>lgolumbic@groom.com</u>

iv

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>15-3740</u>

Short Caption: <u>Carol Chesemore v. David B. Fenkell v. Alliance Holdings, Inc.,</u>

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      **[√] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    <u>Alliance Holding, Inc. Employee Stock Ownership Plan, nominal Defendant-Appellee</u>

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    <u>Groom Law Group, Chartered</u>

    <u>Squire Patton Boggs (previously Squire, Sanders & Dempsey LLP)</u>

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    <u>N/A</u>

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

    <u>N/A</u>

Attorney's Signature: <u>   s/ Sarah M. Adams   </u>      Date: <u>  March 31, 2016  </u>

Attorney's Printed Name: <u>Sarah M. Adams</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** <u>   </u> **No** <u> X </u>

Address: <u>Groom Law Group, Chartered</u>

      <u>1701 Pennsylvania Ave., NW, Washington, D.C. 20006</u>

Phone Number: <u>(202) 861-5432</u>        Fax Number: <u>(202) 659-4503</u>

E-Mail Address: <u>sadams@groom.com</u>

# TABLE OF CONTENTS

Page

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ........................................ i

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ....................................... ii

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ...................................... iii

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ...................................... iv

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ........................................v

TABLE OF CONTENTS........................................................................ vi

TABLE OF AUTHORITIES ................................................................. ix

STATEMENT CONCERNING ORAL ARGUMENT.......................................1

JURISDICTIONAL STATEMENT .........................................................2

COUNTERSTATEMENT OF ISSUES.....................................................6

STATEMENT OF THE CASE ...............................................................7

I.      Fenkell's First And Second Appeals To This Court ...............................7

II.     Fenkell's Current Appeal From The District Court's Contempt
        Order........................................................................................ 10

III.    Background On The District Court's Orders Compelling Post-
        Judgment Discovery And Awarding Fees To The Alliance Parties
        Because "Fenkell's Objections Have No Reasonable Basis" (A-5)........ 14

IV.     There Is Extensive Evidence Supporting The District Court's
        Unappealed Fact Findings Regarding Fenkell's Continuing
        Control Of The Assets He Transferred To Joint Accounts Or To
        Accounts Titled Solely In Mrs. Fenkell's Name ................................... 17

        A.      Through Powers Of Attorney Mrs. Fenkell Provided Him,
                Fenkell Ensured His Control Over The Assets He
                Transferred Into Her Accounts ..................................................... 17

        B.      Fenkell Transferred Millions In Earnings From Alliance
                And His Side-Business, DBF Consulting, Into Joint
                Accounts Or Accounts Titled Solely In Mrs. Fenkell's Name .... 19

        C.      Mrs. Fenkell Admits That She Has Virtually No Knowledge
                Of Fenkell Finances Or How Millions of Dollars Of Assets
                Were Placed Into Joint Fenkell Accounts, Or Into Accounts
                Titled Solely In Her Name ......................................................... 21

**TABLE OF CONTENTS**
(continued)

Page

D.     Fenkell Used His Power Of Attorney Over Accounts Titled Solely in Mrs. Fenkell's Name To Settle Aspects Of The Chesemore Litigation, To Pay His Lawyers In This Case, And To Defend/Prosecute State And Federal Litigation In Pennsylvania Against The ESOP And Alliance Holdings.......... 26

V.     Fenkell Was Given All Due Process Before, During, and After the Contempt Proceedings........................................................................ 27

VI.    The District Court's Decision To Hold Fenkell In Contempt............... 31

VII.   Fenkell Negotiated The Terms Of A Reduced Bond And Voluntarily Pledged Assets He Had Previously Claimed Were Exempt As Security For The $2,044.014.42 ESOP Restoration, But Failed To Post The Agreed Bond, And Then Appealed An Agreed Consent Order ............................................................................ 33

SUMMARY OF THE ARGUMENT .................................................. 35

STANDARD OF REVIEW ................................................................ 37

ARGUMENT ...................................................................................... 38

I.     The ESOP And Alliance Have Standing To Enforce The District Court's  Judgment............................................................................... 38

II.    Under Federal Rule of Civil Procedure 52, Fenkell Is Bound By The Unappealed Findings That He At All Times Controlled The Millions In Assets That He Transferred To Joint Accounts Or Accounts Titled Solely In Mrs. Fenkell's Name. .................................. 39

       A.     Fenkell Has Waived His Ability to Challenge The Court's Factual Findings Under Rule 52.................................................. 39

       B.     Though It Is Not The Alliance Parties' Burden To Demonstrate, The Overwhelming Evidence Regarding Fenkell's Ability To Pay The Judgment (Resulting In His Being Held In Contempt) Demonstrates The District Court Did Not Abuse Its Discretion ......................................................... 42

III.   The Court Can Affirm The District Court's Decision Holding Fenkell in Contempt Through The District Court's Inherent Authority To Enforce Its Own Judgment............................................. 45

**TABLE OF CONTENTS**
(continued)

IV.   Federal Rule of Civil Procedure 70 Provides An Additional Basis And Authority For Holding Fenkell In Contempt. .............................. 47

V.    Fenkell's Miscellaneous Arguments Are Without Merit ...................... 51

    A.    The Court Should Reject Fenkell's Argument That A District Court Must Shield A Contemptor From Its Judgment By Abiding State-Law Formalities Regarding Property And Treating The Contemptor's Allegedly Exempt Assets As If The District Court Were Seeking Under State Law To Execute On The Judgment ............................................ 51

    B.    Fenkell's Due Process Rights Were Not Impinged In Any Way ................................................................................................ 53

    C.    The District Court's Orders On The Motions To Compel And Awarding Attorneys' Fees Should Be Upheld .................... 56

    D.    Fenkell's Appeal Of An Agreed Order To Which He Consented In "Form And Substance" Is Spurious ...................... 57

CONCLUSION ................................................................................................ 58

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*,
   425 F.3d 443 (7th Cir. 2005)......................................................... 47

*Ass'n of Community Organizations for Reform Now (ACORN) v. Edgar*,
   99 F.3d 261 (7th Cir. 1996)................................................ 4, 37, 58

*Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*,
   290 F.3d 843 (7th Cir. 2002)......................................................... 41

*Carnes Co. v. Stone Creek Mech., Inc.*,
   412 F.3d 845, 847 (7th Cir. 2005)...................................................1

*Cent. States, Se. & Sw. Areas Pension Fund v. Wintz Props., Inc.*,
   155 F.3d 868 (7th Cir. 1998)......................................................... 46

*Chesemore v. Alliance Holdings, Inc.*,
   886 F. Supp. 2d 1007 (W.D. Wis. 2012) ...............................passim

*Chesemore v. Alliance Holdings, Inc.*,
   948 F. Supp. 2d 928 (W.D. Wis. 2013) ..................................... 8, 41

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011)...................................................... 32, 49, 50

*Donovan v. Mazzola.*,
   716 F.2d 1226 (9th Cir. 1983)...................................................... 46

*Duncan v. State of Wis. Dep't of Health & Family Services*,
   166 F.3d 930 (7th Cir. 1999)................................................... 4, 56

*Emp'rs Ins. of Wausau v. El Banco De Seguros Del Estado*,
   No. 98-C-0521-C, 2003 WL 23109676 (W.D. Wis. Apr. 23, 2003), *aff'd and remanded*, 357 F.3d 666 (7th Cir. 2004) .......................... 49

*Entm't Software Ass'n v. Blagojevich*,
   No. 05C4265, 2006 WL 3692410 (N.D. Ill. Dec. 3, 2006)...................... 48, 49

*F.T.C. v. Trudeau*,
    579 F.3d 754 (7th Cir. 2009)......................................................... 48

*F.T.C. v. Trudeau*,
    662 F.3d 947 (7th Cir. 2011)......................................................... 36

*Fenkell v. Alliance Holdings, Inc.*,
    No. 03417, Phila. Cnty. Ct. of Com. Pl.) ..................................... 26

*Frey v. E.P.A.*,
    403 F.3d 828 (7th Cir. 2005)......................................................... 37

*Gary W. v. Louisiana*,
    622 F.2d 804 (5th Cir. 1980), *cert. denied*, 450 U.S. 994 (1981) ............... 48

*Hicks v. Feiock*,
    485 U.S. 624 (1988)..................................................................... 42

*Hodgson v. Hotard*,
    436 F.2d 110 (5th Cir. 1971)......................................................... 46

*In re Grand Jury Investigation*,
    600 F.2d 420 (7th Cir. 1979)......................................................... 45

*In re Resource Tech. Corp. v. Allied Waste Indus., Inc.*,
    624 F.3d 376 (7th Cir. 2010)......................................................... 43

*In re Thomas Consol. Indus., Inc.*,
    456 F.3d 719 (7th Cir. 2006)......................................................... 37

*Kenseth v. Dean Health Plan, Inc.*,
    722 F.3d 869 (7th Cir. 2013)......................................................... 50

*LaBarbera v. Audax Constr. Corp.*
    971 F. Supp. 2d 273 (E.D.N.Y. 2013) ........................................... 51

*Laborers' Pension Fund v. Dirty Work Unlimited, Inc.*,
    919 F.2d 491 (7th Cir. 1990)...........................................................4

*Lewitton v. ITA Software, Inc.*,
    585 F.3d 377 (7th Cir. 2009)......................................................... 58

*Lightspeed Media Corp. v. Smith*,
    761 F.3d 699, 712 (7th Cir. 2014)................................................. 43

*Magnaleasing, Inc. v. Staten Island Mall*,
   76 F.R.D. 559 (S.D.N.Y. 1977) ..................................................................... 57

*McComb v. Jacksonville Paper Co.*,
   336 U.S. 187 (1948) ...................................................................................... 46

*Montanile v. Bd. of the Nat'l Elevator Indus. Health Benefit Plan*,
   -- U.S. -- , 136 S. Ct. 651 (2016) ........................................................... 49, 50

*Motorola, Inc. v. Comput. Displays Int'l, Inc.*,
   739 F.2d 1149, 1154 (7th Cir. 1984) ............................................................. 4

*Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*,
   776 F.3d 469 (7th Cir. 2015) .................................................................. 32, 42

*Peacock v. Thomas*,
   516 U.S. 349 (1996) ............................................................. 11, 35, 37, 45

*Preston v. Thompson*,
   565 F. Supp. 294 (N.D. Ill. 1983) ................................................................ 49

*Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*,
   525 F.3d 533 (7th Cir. 2008) ........................................................................ 36

*Rivera v. Benefit Trust Life Ins. Co.*,
   921 F.2d 692 (7th Cir. 1991) ........................................................................ 41

*S.E.C. v. Connectajet.com, Inc.*,
   No. 09-1742, 2015 WL 6437697 (N.D. Tex. Oct. 16, 2015) ......................... 48

*S.E.C. v. Huffman*,
   996 F.2d 800 (5th Cir. 1993) ........................................................................ 44

*S.E.C. v. Solow*,
   682 F. Supp. 2d 1312 (S.D. Fla. 2010) ................................................... 45, 46

*S.E.C. v. Yun*,
   208 F. Supp. 2d 1279 (M.D. Fla. 2002) ........................................................ 45

*Shillitani v. United States*,
   384 U.S. 364 (1966) ...................................................................................... 45

*Spain v. Mountanos*,
   690 F.2d 742 (9th Cir. 1982) ........................................................................ 52

*Spear, et al. v. Fenkell, et al.*,
    No. 13- cv-02391 (E.D. Pa.) ................................................................passim

*Stotler & Co. v. Able*,
    870 F.2d 1158 (7th Cir. 1989)........................................... 37, 47, 48

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    -- U.S. --, 135 S. Ct. 831 (2015)................................................... 40

*Thomas v. Gen. Motors Acceptance Corp.*,
    288 F.3d 305 (7th Cir. 2002)........................................................ 37

*Thomas, Head, and Greisen Emps. Trust v. Buster*,
    95 F.3d 1449 (9th Cir. 1996)) ...................................................... 51

*Travis v. Sullivan*,
    985 F.2d 919 (7th Cir. 1993)..........................................................3

*United States v. Dowell*,
    257 F.3d 694 (7th Cir. 2001)........................................................ 53

*United States v. United Mine Workers*,
    330 U.S. 258 (1947).................................................................... 45

*Usery v. Fisher.*,
    565 F.2d 137, 139 (10th Cir. 1977)............................................. 46

STATUTES

28 U.S.C. § 1291 ..................................................................... 2, 3

28 U.S.C. § 1331 ..........................................................................2

ERISA, 29 U.S.C. § 1001, *et seq*..............................................passim

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)...................................... 50

ERISA § 502(g), 29 U.S.C. § 1132(g)........................................ 17, 53

OTHER AUTHORITIES

Cir. R. 34(f) ................................................................................1

Fed. R. App. P. 28(a)(9)(A)........................................................ 41

Fed. R. Civ. P. 52 ....................................................................passim

Fed. R. Civ. P. 52(a) ......................................................... 40, 41

Fed. R. Civ. P. 69 ....................................................................passim

Fed. R. Civ. P. 69(a) .................................................... 51, 52, 57

Fed. R. Civ. P. 70 ....................................................................passim

Fed. R. Civ. P. 70(a), (e) .................................................... 47

Recording of oral argument, available at:
    http://media.ca7.uscourts.gov/oralArguments/oar.jsp?caseyear
    =14&casenumber=3181&listCase=List+case%28s%29 at 18:25
    to 19:10) .................................................................... 8, 9

## STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Seventh Circuit Rule 34(f), Alliance Holdings, Inc., A.H.I., Inc., AH Transition Corporation, and Alliance Holdings, Inc. Employee Stock Ownership Plan respectfully request that oral argument be held. This case involves the circumstances in which a litigant (Defendant-Appellant David Fenkell) who has been held in contempt of court for failing to comply with a court's judgment can nonetheless avoid that judgment based on an alleged lack of power in the district court to enforce its own judgments. A robust discussion at oral argument could substantially assist the Court's consideration of this appeal.

## JURISDICTIONAL STATEMENT

Defendant-Appellant David Fenkell's ("Fenkell") statement is not complete and correct.[1] The district court had jurisdiction under 28 U.S.C. § 1331 because the claims of the *Chesemore* plaintiff class arose under ERISA, 29 U.S.C. § 1001, *et seq.* This Court had/has jurisdiction over Fenkell's "First Appeal" (Case Nos. 14-3181 & 14-3215, consolidated) under 28 U.S.C. § 1291 which challenged the district court's September 8, 2014 final judgment (as amended on October 17, 2014), disposing of all claims. Oral argument in the First Appeal was held on May 18, 2015, and the Court's decision in that appeal is pending.

In Fenkell's "Second Appeal" to this Court (Case No. 15-3140), Fenkell appealed from the district court's August 28, 2015 order to show cause why he should not be held in contempt of court for failing to obey the court's judgment. After briefing on the Court's order requiring Fenkell to file a jurisdictional memorandum "stating why his appeal should not be dismissed for lack of jurisdiction" (Dkt. 6, 15-3140),[2] the Court determined it lacked

---

[1] A record on appeal has not yet been filed. Citations will be to Fenkell's brief as "Fenkell Br. at ___"; to Fenkell's Appendix as "A-___"; and to the Supplemental Appendix to the Brief of Defendants-Appellees the Alliance Entities and the Alliance ESOP as "SA-___."

[2] All docket entry citations to Fenkell's First, Second, and Third Appeals to this Court will be referred to by the case number corresponding to the appeal. The docket citations to the district court record will not include the case number, 09-CIV-413 (W.D. Wis.).

jurisdiction to hear the Second Appeal because the underlying order to show cause was not a final determination of the post-judgment contempt proceeding. Dkt. 17, 15-3140. Fenkell's Second Appeal was dismissed on November 23, 2015. *Id.*

Fenkell filed his Notice of Appeal on December 9, 2015. Dkt. 1134. In this appeal, Fenkell's "Third Appeal," Fenkell's notice of appeal identifies various orders from which Fenkell appeals and this Court has jurisdiction over most of them under 28 U.S.C. § 1291. Dkt. 1-1, 15-3740. The Court has jurisdiction over Fenkell's appeal from the district court's November 18, 2015 order finding him in contempt of court (A-27-38), and also from several post-judgment orders. *Travis v. Sullivan*, 985 F.2d 919, 923 (7th Cir. 1993) (post-judgment orders are appealable when debtor is held in contempt). The additional orders Fenkell appeals include the February 3, 2015 Order granting the Alliance parties' and plaintiffs' motion to compel post-judgment discovery from Fenkell (A-1-6, "the Motion to Compel Order"); the August 28, 2015 Order awarding attorneys' fees to the Alliance parties based on Fenkell's unreasonable refusals to provide post-judgment discovery of his assets (A-7-A-12, "the Attorneys' Fees Order"); the August 28, 2015 Order denying (in part) the Alliance parties' and plaintiffs' motion to compel

deposition testimony from Fenkell (A-13-16)[3]; and the August 28, 2015 Order to show cause why Fenkell should not be held in contempt (A-17-26).

But this Court lacks jurisdiction over Fenkell's appeal of the December 9, 2015 Agreed Consent Order Regarding David B. Fenkell's Emergency Motion to Stay and to Reconsider Amount of *Supersedeas* Bond. *See* Notice of Appeal, Dkt. 1, 15-3740; A-39-52. This was an Order entered by the district court in which Fenkell agreed in "Form and Substance" to post a bond and pledge certain assets as security in the First Appeal. A-39-52. As the district court found, Fenkell's appeal of an order to which he agreed in "Form and Substance" would be in "bad faith." Dkt. 1143 at 3. To the extent Fenkell still maintains that appeal, this Court lacks jurisdiction because Fenkell did not explicitly reserve a right to appeal in the Agreed Consent Order.[4] *Ass'n of Community Organizations for Reform Now (ACORN) v. Edgar*, 99 F.3d 261,

---

[3] Fenkell states that he is appealing the order denying plaintiffs' and the Alliance parties' motion to compel his post-judgment deposition testimony, but he has waived any challenge by only mentioning it once in his brief. *See* Fenkell Br. at 4; *Duncan v. State of Wis. Dep't of Health & Family Services*, 166 F.3d 930, 934 (7th Cir. 1999) (undeveloped arguments are "waived or abandoned").

[4] Fenkell claims this Court has jurisdiction over the Agreed Consent Order because it is a "final order" with "no additional action [] contemplated by the district court with respect to such order[]." Fenkell Br. at 3. While orders must generally be "final orders" to be appealable, Fenkell ignores the fact that the order he is appealing from was an *agreed* order, entered by the district court after the parties *voluntarily consented* to it. *Id.* The cases Fenkell cites are inapposite to agreed orders. *See id.* (citing *Laborers' Pension Fund v. Dirty Work Unlimited, Inc.*, 919 F.2d 491, 493 (7th Cir. 1990) (appeal of turnover order); *Motorola, Inc. v. Comput. Displays Int'l, Inc.*, 739 F.2d 1149, 1154 (7th Cir. 1984) (appeal of contempt order)).

262 (7th Cir. 1996) ("A party to a consent decree or other judgment entered by consent may not appeal unless it explicitly reserves the right to appeal. … The purpose of a consent judgment is to resolve a dispute without further litigation, and so would be defeated or at least impaired by an appeal."). Consequently, this Court lacks jurisdiction to consider Fenkell's appeal of the Agreed Consent Order.

## COUNTERSTATEMENT OF ISSUES

I.    Whether the ESOP and Alliance had standing to enforce the district court's judgment through contempt proceedings.

II.   Whether under Fed. R. Civ. P. 52 Fenkell is bound by the district court's unappealed findings that he at all times maintained complete control over millions in assets that he transferred to joint accounts or accounts titled solely in Mrs. Fenkell's name yet refused to comply with the court's 2014 order that he restore $2,044,014.42 to the Alliance ESOP.

III.  Whether a district court has the inherent authority to enforce its judgments through its power of contempt.

IV.   Whether the district court also properly invoked Fed. R. Civ. P. 70 as a basis for enforcing its judgment.

V.    Whether the Court should summarily dismiss Fenkell's miscellaneous contentions that:

    A.   A district court must shield a contemptor from its judgment by treating the contemptor's exempt assets as if the district court were seeking under state law to execute through a Fed. R. Civ. P. 69 enforcement proceeding;

    B.   His due process rights were violated;

    C.   Judgment creditors such as the Alliance parties cannot have post-judgment discovery from a judgment debtor (Fenkell);

    D.   Fenkell may appeal an Agreed Order to which he consented in "Form and Substance."

## STATEMENT OF THE CASE

### I.    Fenkell's First And Second Appeals To This Court.

In Fenkell's First Appeal, Fenkell's brief conceded liability for his numerous ERISA breaches of fiduciary duty and confined his appeal to challenging the remedies fashioned by the district court.[5] The district court had determined, and restated in harsh language on numerous occasions, that Fenkell designed and orchestrated for his own benefit a complex ESOP transaction (the "2007 Transaction") that exploited the plan assets that employees of Alliance's[6] subsidiary, Trachte Building Systems, Inc. ("Trachte"), held within the Alliance ESOP. *See Chesemore v. Alliance*

---

[5] On September 8, 2014, the district court entered final judgment against Fenkell requiring the following relief:  (a) Fenkell must restore to the Alliance Holdings, Inc. Employee Stock Ownership Plan ("Alliance ESOP") $2,044,014.42; (b) Fenkell must indemnify defendants Mastrangelo, Seefeldt and Klute (the "Trustee defendants") for any compensatory relief they are required to pay (of the $6,473,856.82 ordered by the Court); (c) Fenkell is barred from serving as a trustee of the Alliance ESOP; and (d) Fenkell must pay plaintiffs' counsel $1,854,008.50 in attorneys' fees. Dkt. 986. On October 16, 2014, the court issued its Amended Final Judgment, clarifying that Fenkell is "liable to plaintiffs for attorney's fees on all claims not part of the settlement agreement in the amount of $1,854,008.50." Dkt. 999 at 2 (entered on the docket October 17, 2014). All other orders in the September 8, 2014 Judgment remain the same.

[6] The "Alliance Entities" are Alliance Holdings, Inc. ("Alliance"), A.H.I., Inc. ("A.H.I."), and AH Transition Corporation ("AH Transition"). Fenkell and the Alliance Entities were represented by the same law firm, Squire, Sanders & Dempsey LLP, "Squire Sanders"—what is now Squire Patton Boggs—in the 2007 Transaction (defined below) and during this litigation until April 29, 2013, when Alliance, the Alliance ESOP, and Fenkell obtained separate counsel. *E.g.*, Dkts. 592-7; 776. When Squire Sanders represented the Alliance Entities and Fenkell, the district court collectively referred to the Alliance Entities and Fenkell as the "Alliance Defendants." *E.g.*, Dkt. 733.

*Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012) (ruling on liability);

*Chesemore v. Alliance Holdings, Inc.*, 948 F. Supp. 2d 928, 946 (W.D. Wis.

2013) (ruling on remedies, finding that Fenkell was "far and away the most

culpable party"). The district court also found that Fenkell was not a truthful

witness, observing that Fenkell had memory of intricate detail when it served

his purposes but allegedly could not remember events when it did not. *See*

*Chesemore*, 948 F. Supp. 2d at 937, 946.[7]

Despite Fenkell's failure to appeal the fiduciary rulings against him,

Fenkell's counsel at the May 18, 2015 oral argument asserted that Fenkell

was not a breaching ERISA fiduciary with respect to the plan assets of

Trachte participants held in the Alliance ESOP. Judge Sykes rejected that

contention:

> The basis of the breach of the fiduciary duty liability
> holding, which you have not appealed, is that
> [Fenkell] was a fiduciary of the Alliance ESOP, which
> the Trachte beneficiaries were folded into, and later
> spun off, so his fiduciary duty breach flowed from
> that relationship. [Fenkell] betrayed their trust while
> they were members of the Alliance ESOP, and that's
> just unassailable on this record. The district judge
> was very clear and thorough in his decision on that
> score and you haven't even challenged it. So,
> [Fenkell's] fiduciary status is established….

---

[7] Fenkell's brief in the First Appeal did not dispute the district court's findings that
he was "the most culpable" ERISA violator and that he deliberately "orchestrated"
ERISA fiduciary violations involving the Alliance ESOP assets. Dkt. 790 at 30, 36.

(recording of oral argument, available at:

http://media.ca7.uscourts.gov/oralArguments/oar.jsp?caseyear=14&casenumb
er=3181&listCase=List+case%28s%29 at 18:25 to 19:10). The Court's decision

in Fenkell's First Appeal is pending.

Fenkell's Second Appeal to this Court (No. 15-3140), filed on September

28, 2015, was taken from the August 28, 2015 order of the district court that

Fenkell show cause why he should not be held in contempt for failing to

restore the Alliance ESOP $2,044,014.42, as ordered by the district court a

year earlier, on September 8, 2014. Before Fenkell appealed, the district

court had held a show-cause evidentiary hearing on September 10, 2015, at

which Fenkell testified and submitted numerous exhibits. *See* SA-7, SA-8-

103, SA-253-355. The court also allowed Fenkell to submit a post-hearing

brief, withholding any decision on whether Fenkell would be held in contempt

while Fenkell appealed the order. SA-327-328 at 75:21-76:3.

Fenkell's September 28, 2015 appeal halted proceedings in the district

court. After briefing by the parties on Alliance's motion to dismiss Fenkell's

appeal, this Court dismissed the appeal for lack of jurisdiction because the

district court's order to show cause did not "constitute a final determination

of the post-judgment proceeding" by appellees to have Fenkell held in

contempt. Dkt. 17 at 2, 15-3140.

**II.    Fenkell's Current Appeal From The District Court's Contempt Order.**

Fenkell did not restore the ESOP as ordered on September 8, 2014, or seek a stay supported by a bond or security pending his First Appeal. A-2, 28-30. He also unsuccessfully fought the Alliance parties' and the *Chesemore* plaintiffs' post-judgment efforts to discover his assets. Fenkell's current (Third) appeal is from the district court's November 18, 2015 order finding him in contempt for failing to restore the Alliance ESOP $2,044,014.42. A-27-38. Fenkell also appeals various other orders, including orders compelling him to provide post-judgment discovery and awarding the Alliance parties and plaintiffs' attorneys' fees based on the unreasonableness of Fenkell's discovery refusals. A-1-16.

To begin, as in his First Appeal, Fenkell asserts that the district court found both him and Alliance Holdings, Inc. liable for ERISA fiduciary breaches and ordered both to be held jointly and severally liable for those breaches. Fenkell Br. at 8; Dkt. 790 at 37. Fenkell omits, however, that he was Alliance's president, CEO, and sole board member. Dkt. 533-1 ¶ 18. Fenkell further omits that he was the Alliance ESOP's sole trustee and the only person with fiduciary authority over Alliance ESOP assets with respect to the 2007 Transaction. Dkt. 733 at 8-9. And, though Alliance was stuck with liability because Fenkell held corporate roles, Fenkell further omits the findings that Alliance only acted "through Fenkell's authority," and that two

10

other Alliance executives (Ken Wanko and Eric Lynn) were not ERISA fiduciaries with responsibility for Fenkell's wrongdoing. Dkt. 733 at 8-9, 90.

The theme of Fenkell's brief on appeal is judgment-avoidance. Yet his brief does not address up front the district court's factual findings in support of its contempt ruling. He also concedes (Fenkell Br. at 35) that "a federal court has 'inherent power to enforce its judgments'" under *Peacock v. Thomas*, 516 U.S. 349, 357 (1996). Fenkell instead leads off by arguing that the ESOP and Alliance do not have standing,[8] that the district court should not have invoked Federal Rule of Civil Procedure 70 when ordering him to restore $2,044,014.42 to the ESOP, and that the judgment was a "Monetary Award" that allegedly did not require Fenkell to perform a "specific act." Fenkell Br. at 16, 22-28 (language and caps Fenkell's). Without citing a single case in support, Fenkell next argues the district court should have tailored its contempt ruling to Federal Rule of Civil Procedure 69, "which governs

---

[8] The ESOP was a nominal defendant from the inception of the action (*see* Dkt. 1 ¶ 23, naming the ESOP as a nominal defendant), and as recognized by the court in its Order to Show Cause. A-20; *see also* Dkt. 747 ¶ 29. In their settlement, the *Chesemore* plaintiffs assigned their rights to make the ESOP whole to the ESOP and Alliance and rights of the Trachte trustees to seek indemnity from Fenkell to Alliance. The assignments would not be final until after conclusion of Fenkell's First Appeal. *See* Dkt. 967, at 47. The district court rejected Fenkell's standing arguments because the ESOP was in fact a party to the judgment and Alliance is "the administrator of the Plan." A-3. The court also found that Fenkell's assignment contention with respect to the ESOP was irrelevant, because "the court's judgment orders Fenkell to restore to the nominal defendant Alliance ESOP over $2 million." *Id.; see supra* n.5; *see also* A-18, n.1; 24-25 (denying without prejudice Alliance's motion to enforce plaintiffs' assignment of the Trachte indemnity claim to Alliance because this Court has not ruled in Fenkell's First Appeal).

procedures for money judgments in federal court, and provides for the use of writs of execution as the appropriate enforcement method." Fenkell Br. at 16, 34-36. Fenkell then asserts that the district court violated his due process rights by allegedly denying him legal protections for "his exempt and otherwise protected assets and Mrs. Fenkell's assets under state law and federal law…." Fenkell Br. at 16, 42-51.

At the end of his brief, Fenkell claims that the district court acted improperly by allegedly forcing him to use (i) exempt assets, or (ii) assets technically titled in Mrs. Fenkell's name to restore the ESOP. Fenkell Br. at 59-60. He also contends "the district court was clearly erroneous and abused its discretion when it determined that Fenkell had the ability to pay the amended final judgment" Fenkell Br. at 51. However, apart from this cursory statement, Fenkell never explains how the evidence supports his contention of an inability to pay—contrary to Federal Rule of Civil Procedure 52—or how the district court's contrary conclusion was an abuse of discretion. In fact, nowhere does Fenkell discuss, much less challenge on abuse of discretion grounds, critical factual findings made by the district court in support of its contempt order.

These unappealed fact findings (challenges to which are now waived) include: (1) Fenkell earned all Fenkell-family income (at least $31 million between 2001-2011); (2) Fenkell over time transferred most of his income to

joint accounts or accounts titled solely in Mrs. Fenkell's name; (3) "virtually all of the assets now titled solely in [Mrs. Fenkell's] name remain in [Fenkell's] control [through general and specific powers of attorney that empowered him to dispose of the assets he had transferred to those accounts]"; and (4) "Fenkell's testimony and certain financial evidence further support the court's finding that Fenkell has sufficient assets under his control to either restore $2,044,014.42 to the Alliance ESOP or to post a bond in that amount." A-34, 36-37; *infra* at Statement of the Case, Section VI.

Additional unappealed fact findings include: "Fenkell was actually taking affirmative steps to put his assets (at least technically) outside the reach of the Plan [ESOP] and other creditors" while at the same time "[maintaining] check-writing authority over those funds" held in Mrs. Fenkell's name or jointly (A-33, 34, 37); and that it was "[o]f particular note, [that] David Fenkell authorized approximately $2.5 million in wire transfers from his wife's Barclay's account to the law firm of Jackson Lewis from December 2013 to November 2014—his principal counsel on the merits of this lawsuit against him." A-36, n.3. REDACTED

REDACTED

Based on these unappealed findings, the district court determined that Fenkell had "wholly failed to meet his burden to show an inability to comply" with the court's judgment. A-36 (citing Dkt. 1066 at 15), A-37. Contrary to Fenkell's assertion on appeal that he was "forced" to use exempt assets (Fenkell Br. at 59 n.18, 68), the district court stated that it "[was] *not* ordering Fenkell to liquidate a specific asset to comply with its order that he restore funds to the Alliance ESOP" and "that there are many sources of funds and avenues of compliance available to Fenkell [listing examples]." A-35 (emphasis in original), A-37.

### III.   Background On The District Court's Orders Compelling Post-Judgment Discovery And Awarding Fees To The Alliance Parties Because "Fenkell's Objections Have No Reasonable Basis" (A-5).

The Alliance parties and the *Chesemore* plaintiffs sought post-judgment discovery to discover assets held in Fenkell's and Mrs. Fenkell's names after the September 8, 2014 judgment order. When Fenkell refused to comply, the Alliance parties and plaintiffs both filed motions to compel. Dkts. 1023, 1025. The district court rejected Fenkell's proffered reasons for refusing to produce discovery, noting that "Fenkell ha[d] yet to seek a stay of execution of the judgment in this court or in the Seventh Circuit Court of Appeals." A-2. Moreover, though "Fenkell would cast [Alliance Holdings and

the Alliance ESOP] as 'non-parties,' for whom no discovery is owed (Fenkell

Opp'n. (Dkt. 1028)," the court determined that post-judgment discovery under

Rule 69 "is not limited to parties," as it permits "the judgment creditor or a

successor in interest" to obtain post-judgment discovery (a status the Alliance

ESOP and Alliance Holdings, Inc. both held under the court's order requiring

Fenkell to restore over $2 million to the Alliance ESOP). A-2,3, 5.[9]  The court

further held that the Alliance ESOP *is* a party to the judgment and that

"Alliance Holdings, Inc., as the administrator of the Plan [ESOP], also has a

sound basis for seeking post-judgment discovery." A-3. The court also

dismissed Fenkell's contention that his and his wife's financial information

was "beyond the scope of permissible discovery" because Rule 69 allows

discovery from "any person," including spousal discovery in the asset-

discovery context. A-3-4. Thus, "Alliance and plaintiffs have a right as

judgment creditors to determine the location and extent of Fenkell's assets."

A-4.

    Alliance and plaintiffs in turn requested attorneys' fees, which the

district court awarded as a sanction because "Fenkell's objections [had] no

---

[9] On November 17, 2014, the district court determined, without opposition
from Fenkell, that the Alliance ESOP and Alliance Holdings were judgment
creditors, and recounted the "past steps [Fenkell] has taken to move assets
outside the reach of [*Chesemore* plaintiffs and Alliance], including
transferring funds to his wife; and the likelihood [Fenkell] will take other
steps to avoid payment of the judgment, even if upheld on appeal." SA-3.

reasonable basis." A-5- 6.[10] Thereafter, on August 28, 2015, the court awarded Alliance $31,740.54 in attorneys' fees (reduced from the $42,938.42 sought). A-8.

Fenkell now argues that the order (A-4) compelling discovery of Mrs. Fenkell's financial information was inappropriate because Alliance and plaintiffs did not issue a subpoena for her information. (Fenkell Br. at 66-68). Fenkell did not make this argument when resisting the motion to compel (Dkt. 1028) and, thus, has waived it here. Further, the Alliance parties and plaintiffs *did* issue subpoenas for Mrs. Fenkell's financial information, and Fenkell's counsel produced discovery pursuant to those subpoenas. Dkts. 1071, 1072; *see also* SA-5 (in denying Fenkell's motion to quash subpoenas served by the *Chesemore* plaintiffs on financial institutions holding Fenkell-family funds, the court stated, "Throughout this case, plaintiffs have submitted sufficient evidence of financial manipulation and transfer of moneys under Mr. Fenkell's control to justify the discovery sought here.").

---

[10] In sanctioning Fenkell, the court explained that post-judgment discovery regarding Mrs. Fenkell's assets was "particularly" appropriate "given Fenkell's previous "attempt to move assets beyond the reach of plaintiffs." A-4.

**IV.    There Is Extensive Evidence Supporting The District Court's Unappealed Fact Findings Regarding Fenkell's Continuing Control Of The Assets He Transferred To Joint Accounts Or To Accounts Titled Solely In Mrs. Fenkell's Name.**

Post-judgment discovery demonstrated Fenkell's continuing control over assets he had placed in joint accounts with his wife or in accounts titled solely in her name. This evidence was presented to the district court with the Alliance parties' August 14, 2015 Motion to Enforce the Judgment, for a Constructive Trust, Temporary Restraining Order and Injunction Freezing Fenkell Assets, and for Attorneys' Fees pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g). Dkts. 1066-1075.

**A.    Through Powers Of Attorney Mrs. Fenkell Provided Him, Fenkell Ensured His Control Over The Assets He Transferred Into Her Accounts.**

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

**B.    Fenkell Transferred Millions In Earnings From Alliance And His Side-Business, DBF Consulting, Into Joint Accounts Or Accounts Titled Solely In Mrs. Fenkell's Name.**

REDACTED

_____

[11] All references to AH_EDPA bates numbers are to documents that were produced from the *Spear* litigation to the *Chesemore* parties on March 20, 2015. *Spear, et al. v. Fenkell, et al.*, 13- cv-02391 (E.D. Pa.).

19

REDACTED

REDACTED

REDACTED

REDACTED

**REDACTED**

C.    Mrs. Fenkell Admits That She Has Virtually No Knowledge Of
      Fenkell Finances Or How Millions of Dollars Of Assets Were
      Placed Into Joint Fenkell Accounts, Or Into Accounts Titled
      Solely In Her Name.

**REDACTED**

**REDACTED**

**REDACTED**

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED



REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

25

**REDACTED**

**D.** Fenkell Used His Power Of Attorney Over Accounts Titled Solely in Mrs. Fenkell's Name To Settle Aspects Of The *Chesemore* Litigation, To Pay His Lawyers In This Case, And To Defend/Prosecute State And Federal Litigation In Pennsylvania Against The ESOP And Alliance Holdings.

**REDACTED**

As the district court found, and as Fenkell does not dispute on appeal, "Fenkell authorized approximately $2.5 million in wire transfers" to pay his litigation expenses between December 2013 and November 2014. A-36, n.3; Dkt. 1066 at 26-27. These transfers were made to pay (1) a partial settlement with the *Chesemore* plaintiffs, and (2) legal fees to his lawyers.

26

REDACTED

REDACTED

---

[16] Fenkell drew upon an account titled solely in Mrs. Fenkell's name to pay a settlement of the phantom stock transaction claim of the *Chesemore* plaintiffs for $1.8 million. *See* Dkt. 824 at 4 ("Plaintiffs have alleged—indeed, there appears to be no dispute—that the funds [Fenkell took] from the August 2007 transaction were transferred to Karen Fenkell in October 2007.").

[17] REDACTED

V.   **Fenkell Was Given All Due Process Before, During, and After the Contempt Proceedings.**

On August 14, 2015, the Alliance parties filed their Motion to Enforce the Judgment, for a Constructive Trust, Temporary Restraining Order and Injunction Freezing Fenkell Assets, and for Attorneys' Fees. In the motion was a request that Fenkell be ordered to show cause why he should not be held in contempt. Dkt. 1066 at 23-25. On August 17, 2015, the court set a deadline of August 21, 2015, for Fenkell to respond to the Alliance parties' motion. Dkt. 1076.

On August 17, 2015, Fenkell filed a motion for an extension of time to file his opposition to the Alliance parties' motion (which was granted), and he filed his opposition brief on August 24. Dkts. 1077, 1078, 1081. On August 25, 2015, the court set a telephonic status conference to occur on August 26, 2015. Fenkell's counsel said he could not attend the hearing, so the court cancelled the hearing, stating it would "reschedule [it] if necessary." Dkt. 1084.

On August 28, 2015, the district court entered an Order requiring Fenkell to restore $2,044,014.42 to the Alliance ESOP by September 4, 2015, or appear at a hearing on September 10, 2015, to show cause why he should not be held in contempt of court. A-25. Fenkell thereafter filed a Motion for

28

Reconsideration of that Order on September 4, 2015. Dkt. 1095.[18] Fenkell did

not restore $2,044,014.42 to the Alliance ESOP prior to September 10, 2015.

The contempt hearing was held on September 10. SA-7. The court

heard testimony from Fenkell and argument from all parties. *Id.* Fenkell

entered numerous exhibits into evidence including:



However:

_____

[18] The Alliance parties opposed Fenkell's motion (Dkt. 1095) on September 9, 2015.
Dkt. 1097.



[19] At the end of the contempt hearing, the court granted Fenkell's request to submit a post-hearing brief. SA-327-328 at 75:21-76:3. Fenkell thereafter requested an extension of time to file that brief (which was granted), and filed his brief on September 16, 2015. Dkt. 1107.

Nine days later, Fenkell attempted to appeal the court's August 28, 2015 Order to Show Cause (A-17-26). Dkt. 1109. This Court dismissed the appeal for lack of jurisdiction. *See* Dkt. 17, 15-3140, at 2 (describing the appeal as "premature" because the "orders of August 28, 2015 and September 10, 2015, neither separately nor in combination, constitute[d] a final

_____

[19] REDACTED

determination of the post-judgment proceeding that was commenced by

appellees' post-judgment motion.").

## VI.   The District Court's Decision To Hold Fenkell In Contempt.

The district court entered its contempt order on November 18, 2015. A-

27-38. The court relied on the evidence at the hearing and that submitted by

Alliance, including:

- "Fenkell has been the sole source of income … for his family since 1988," earning $31 million from Alliance and DBF Consulting from 2001-2011; A-36.

- Fenkell over time transferred most of his income to joint accounts or to accounts titled solely in Mrs. Fenkell's name; *Id.*

- "Fenkell has retirement accounts titled in his own name [exceeding $1,100,000]." A-36 (citing Dkt. 1066 at 15).

- "Fenkell was actually taking affirmative steps to put his assets (at least technically) outside the reach of the Plan and other creditors, [so] it is hardly surprising that Fenkell largely ignores his obligation to show 'reasonable and diligent efforts' to restore funds to the Plan." A-33, 34.

- "[Fenkell] *could* use his own assets, and indeed virtually all of the assets now titled solely in his wife's name remain in his control." A-34.

- Fenkell "exercised significant control over Karen Fenkell's accounts, including regularly authorizing wire transfers from these accounts." A-36.

- "Fenkell asserts that any control he has over funds in his wife's name is in a fiduciary capacity only, and therefore his use of those funds to discharge his obligations here would constitute a breach of his duty to her. This is incredible on a number of levels. … ." A-34.

- "Fenkell authorized approximately $2.5 million in wire transfers from his wife's Barclay's account to the law firm of Jackson Lewis from December 2013 to November 2014—his principal counsel on the merits of this lawsuit against him." A-36, n.3.

- "At the hearing, Fenkell's testimony and certain financial evidence further support the court's finding that Fenkell has sufficient assets

under his control to either restore $2,044,014.42 to the Alliance ESOP or to post a bond in that amount." A-36, 37; *see* SA-292-293 at 40:9-10, 41:1-10.

The court also made the following legal conclusions:

- Fenkell's jurisdictional challenge was nonsense, explaining the court must have the ability to enforce its own judgment, or "there would be no point to seeking a stay of enforcement pending appeal or seeking a bond be posted in lieu of enforcement as contemplated by Federal Rule of Civil Procedure 62, both steps defendant Fenkell as assiduously avoided in favor of a strategy of asset preservation techniques designed to keep his and his wife's judgment creditors at bay." A-30.

- It could enforce an equitable remedy through its contempt power under Rule 70 and the power granted to a court sitting in equity. A-31; *see, e.g.*, *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011).

- Fenkell's argument that he could not comply with the Judgment because he "lacks non-exempt assets or assets not held in tenancy in the entireties under Pennsylvania law" is a *non sequitur.* A-35 ("[N]oticeably absent from the legal authority cited by Fenkell's counsel is any case holding that a court's equitable powers to require a party to perform an act … are limited to executing on non-exempt assets for purposes of execution on a monetary judgment."

- Fenkell's actions demonstrated a failure to make a reasonable and diligent effort to comply with the Judgment, warranting that he be held in contempt. A-33 (citing *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 475 (7th Cir. 2015)).

Fenkell was thus held in contempt and ordered to restore $2,044.014.42 to the Alliance ESOP or provide a bond pending appeal, lest a fine of $500 per day be imposed, which would double each week of non-payment. A-38. At the point when the fines exceeded $1 million, Fenkell would be required to appear before the court to show cause why he should not be held in custody until in full compliance. *Id.*

**VII.  Fenkell Negotiated The Terms Of A Reduced Bond And Voluntarily Pledged Assets He Had Previously Claimed Were Exempt As Security For The $2,044.014.42 ESOP Restoration, But Failed To Post The Agreed Bond, And Then Appealed An Agreed Consent Order.**

After the district court issued its November 18, 2015 order finding Fenkell in contempt of court (A-38), Fenkell filed an Emergency Motion to Stay and Reconsider Amount of Supersedeas Bond (Dkt. 1122). The parties subsequently agreed on December 8 to the entry of a reduced bond that Fenkell could post based on his further agreement to post assets he had previously described as exempt (Fenkell's rights to his Alliance ESOP account and Spencer Turbine Company Phantom Stock Rights). A-39-52.

The parties consented to an "Agreed Consent Order" in "Form and Substance" that incorporated Fenkell's asset pledges (*see* A-39, 43) in return for a reduction of the amount of the bond pending appeal. A-39-52. However, two hours after the district court's December 9, 2015 Agreed Consent Order appeared on the docket, Fenkell filed a notice of appeal that included an appeal from the Agreed Consent Order. A-39-52. He also filed a deficient bond with the court. *See* Dkts. 1135, 1135-1.[20]

---

[20] REDACTED

Because Fenkell appealed an Agreed Consent Order into which he voluntarily entered, the next day (December 10, 2015) the Alliance parties moved the district court to enforce its November 18, 2015 order finding Fenkell in contempt, and further pointed out that Fenkell had not posted a bond conforming to the Agreed Consent Order. Dkt. 1138. While that motion was pending, Fenkell filed a corrected bond on December 11 (Dkt. 1140), and on December 14 opposed the Alliance parties' motion that the November 18 order be enforced in full (Dkt. 1141).

Contrary to Fenkell's assertion in this Court that he had "immediately complied" with the Agreed Consent order by filing the agreed bond, on December 15, 2015, the district court determined that the bond originally posted by Fenkell differed "in a material respect" from the Agreed Consent Order. *See* SA-356-358. Nevertheless, the district court gave Fenkell the benefit of the doubt regarding his appeal of the Agreed Consent Order, construing Fenkell's appeal of that order as protective only so that he preserved his appeal of the underlying contempt order. The district court observed that an appeal of the Agreed Consent Order itself would be in "bad faith" and deferred to this Court on whether it has jurisdiction to consider an appeal of an agreed consent order. SA-358.

**REDACTED**

## SUMMARY OF THE ARGUMENT

The only contempt fact issue in dispute below was "whether Fenkell cannot comply with the court's [ESOP restoration] order due to an inability to pay the amount due." A-33; *see* Fenkell Br. at 54-60. Yet Fenkell does not challenge on an abuse of discretion (or any other basis) the district court's fact determinations that he continues to control the millions of assets that he alone generated and then transferred to accounts titled jointly with his wife or in her name alone. Nor does Fenkell challenge the evidence that Mrs. Fenkell is an uninformed bystander who has virtually zero knowledge of how millions were deposited in her accounts or how Fenkell made money in the first place. Fenkell likewise does not challenge the district court's conclusion that he managed his financial affairs so that his ERISA violations would not be remediable because he had moved his assets to accounts technically titled in Mrs. Fenkell's name. And the record is undisputed that Fenkell paid $5.5-6.5 million from his wife's accounts to fund his litigation expenses and objectives in *Chesemore* and Pennsylvania, all the while refusing to restore the ESOP (as he was ordered to do in September 2014).

There is thus nothing in the record to support Fenkell's claim that he lacked the financial ability to restore the ESOP. Given Fenkell's additional concession that the district court had the inherent power under *Peacock v. Thomas*, 516 U.S. 349 (1996), to enforce its judgment through the contempt

power, it is ballgame-over for Fenkell's remaining judgment-avoidance arguments. *See* Fenkell Br. at 35.

Indeed, there is nothing from a policy or legal perspective to commend Fenkell's effort in this Court to weaken the district court's inherent power by appending additional hurdles (whether under Rule 69, 70, or otherwise) to enforcement of court judgments. Conversely, the perverse consequence of adding barriers to the judgment's enforcement would be to assist Fenkell— the adjudged ERISA violator—by giving him more opportunities and tools to frustrate the district court's judgment that awarded relief to the ESOP and its participants. If Fenkell's Rule 69 contentions were accepted, Fenkell could re-raise defenses rejected by the district court in foreign-jurisdiction enforcement proceedings. And these courts would not have the contempt power to remedy Fenkell's repudiation of the judgment entered against him by the district court here.

Fenkell's remaining due process and miscellaneous judgment-avoidance arguments should also be rejected. The Alliance parties respectfully request that the orders from which Fenkell appeals be affirmed in all respects.

## STANDARD OF REVIEW

"A district court's decision on a contempt petition 'is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous.'" *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989); *see F.T.C. v. Trudeau*, 662 F.3d 947, 950 (7th Cir. 2011); *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008) (a contempt order will be affirmed "if the district court's determination is plausible in light of the record in its entirety.") (internal citation omitted).[21]

The other post-judgment Orders Fenkell appeals are also reviewed for abuse of discretion. *In re Thomas Consol. Indus., Inc.*, 456 F.3d 719, 724 (7th Cir. 2006) (affirming grant of motion to compel discovery and entering sanctions). However, the Court lacks jurisdiction to review the Agreed Consent Order to which Fenkell consented to in "Form and Substance" and in which Fenkell agreed to pledge his retirement and other (previously claimed) exempt assets as partial security for the ESOP restoration order. A-43. *Edgar*, 99 F.3d at 262.

---

[21] Fenkell cites *Frey v. E.P.A.*, 403 F.3d 828, 833 (7th Cir. 2005) and *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307-08 (7th Cir. 2002) to argue that *de novo* review applies because a "question of law" is at issue, but provides no basis for it. Fenkell Br. at 19. Neither case involved contempt proceedings. *Frey* raised a question of statutory interpretation: whether a citizen could bring suit under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980. 403 F.3d at 833. In *Thomas*, the court described generally the difference between review of facts and law, and upheld the lower court's dismissal of a suit because the plaintiff's lie on his application to proceed *in forma pauperis* should be reviewed for clear error (on the facts) and abuse of discretion (on the dismissal). 288 F.3d at 308.

# ARGUMENT

## I.     The ESOP And Alliance Have Standing To Enforce The District Court's Judgment.

Fenkell argues that Alliance and the ESOP lacked standing to file a contempt motion because certain assignments by the *Chesemore* plaintiffs to them will not be effective until this Court decides Fenkell's First Appeal. Fenkell Br. at 19-22. This contention is without merit.

As the court recognized in its Order to Show Cause, the ESOP has been a nominal defendant from the inception of this action. A-20; *see* Dkt. 1 ¶ 23; Dkt. 747 ¶ 29 ("The Alliance ESOP is named as a defendant in this action pursuant to Federal Rule of Civil Procedure Rule 19, solely to assure that complete relief be granted."). In their settlement with Alliance and the ESOP, the *Chesemore* plaintiffs assigned their rights to make the ESOP whole to the ESOP and Alliance and the rights of the Trachte trustees to seek indemnity from Fenkell to Alliance. The assignments would not be final until after conclusion of Fenkell's First Appeal. *See* Dkt. 967, at 47, 50. But the district court rejected Fenkell's standing arguments because the ESOP was a party to the judgment and Alliance is "the administrator of the Plan" with an obligation to advocate for it. A-3. The court also found that Fenkell's assignment contention was irrelevant because "the court's judgment orders Fenkell to restore to the nominal defendant Alliance ESOP over $2 million."

*Id.; see supra* n.5. *See also* A-18, n.1; 24-25 (denying without prejudice

Alliance's motion to enforce plaintiffs' assignment of Trachte indemnity claim

to Alliance because a ruling on Fenkell's First Appeal remains pending).

In their contempt motion, the ESOP and Alliance sought to enforce the

district court's judgment, not the assignments. This Court should reject

Fenkell's lack of standing arguments for the same reasons.

## II. Under Federal Rule of Civil Procedure 52, Fenkell Is Bound By The Unappealed Findings That He At All Times Controlled The Millions In Assets That He Transferred To Joint Accounts Or Accounts Titled Solely In Mrs. Fenkell's Name.

### A. Fenkell Has Waived His Ability to Challenge The Court's Factual Findings Under Rule 52.

Fenkell argues that the contempt proceedings were "contrary to law"

because the district court allegedly erred in invoking Rule 70, should have

proceeded under Rule 69, violated Fenkell's procedural due process rights,

and refused to acknowledge supposed state law protections due Fenkell's

exempt assets (which he subsequently voluntarily pledged in the December 9,

2015 Agreed Consent Order). A 39-52. However, without discussing the

evidence and barely mentioning the court's factual findings, Fenkell also

contends that the court abused its discretion because there allegedly was

insufficient evidence to find that he *could* comply with judgment. Fenkell Br.

at 16-17.

Apart from his bald statement, Fenkell never discusses the evidence presented to the district court, and misrepresents the basis of the decision by omitting the court's findings that he (1) had control of all assets (regardless of the account in which they were titled), check-writing authority as to all assets, and powers of attorney over Mrs. Fenkell's accounts which contained the assets Fenkell had placed there; and (2) freely drew on those accounts to pay $2 million for his legal obligations and litigation expenses (and testified that he has paid an additional $3-4 million to fund his Pennsylvania litigation). Fenkell's failure on appeal to address those dispositive findings deems any challenge to them waived.

In pertinent part, Rule 52(a)(6) provides:

> Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility.

Thus, Rule 52 orders "must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see Teva Pharms. USA, Inc. v. Sandoz, Inc.*, -- U.S. --, 135 S. Ct. 831, 836-37 (2015) (Rule 52 "sets forth a 'clear command'" and "does not make exceptions … from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous").

40

Accordingly, where, as here, the appellant fails to address Rule 52 fact findings, the appellant cannot challenge the court's order based on those findings. By completely ignoring key facts central to the court's contempt findings, including the determination that Fenkell's testimony was "incredible" (A-34, n.2), Fenkell has "ignored the district court findings and [told] a very different story" of the case. He thus waives any challenges to the district court's fact findings. *Carnes Co. v. Stone Creek Mech., Inc.*, 412 F.3d 845, 847 (7th Cir. 2005) ("Findings of fact entered … are reviewed under the clearly erroneous standard, Fed. R. Civ. P. 52(a), and an appellate court oversteps its bounds if it attempts to duplicate the role of the trial court.") (citation omitted).[22]

Finally, not only must a party address Rule 52 findings to avoid waiver, but "Rule 52(a) demands even greater deference to the trial court's factual findings when they are based upon determinations of credibility." *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir. 1991) (citing *Anderson*, 470 U.S. at 575 (1985) (explaining that, "[w]hen findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands

---

[22] Fenkell's failure to address the facts underlying the court's contempt order also runs afoul of Federal Rule of Appellate Procedure 28(a)(9)(A), which requires that an appellant's brief "contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *See Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n.6 (7th Cir. 2002) (stating that "[p]erfunctory and undeveloped arguments are waived") (citation omitted).

even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.")).

Here the court discredited Fenkell's testimony, finding that it was "incredible" for Fenkell to argue that his use of funds in Mrs. Fenkell's name would "constitute a breach of his duty to her." A-34; *see also Chesemore*, 948 F. Supp. 2d at 937 (finding Fenkell's "otherwise remarkable memory for details" and inability to remember the "value he personally assigned to the HIG earn-out opportunity" as "incredible"). Fenkell does not challenge the court's adverse (to Fenkell) credibility determination in any respect, and he is thus bound by that determination regarding his ability to restore the Alliance ESOP.

> **B.    Though It Is Not The Alliance Parties' Burden To Demonstrate, The Overwhelming Evidence Regarding Fenkell's Ability To Pay The Judgment (Resulting In His Being Held In Contempt) Demonstrates The District Court Did Not Abuse Its Discretion.**

A finding of contempt requires proof that: "(1) the district court's order set forth an unambiguous command; (2) [the debtor] violated that command; (3) the violation was significant, meaning that [the debtor] did not substantially comply with the order; and (4) [the debtor] failed to make a reasonable and diligent effort to comply." *Ohr ex rel. NLRB*, 776 F.3d at 474; *see Hicks v. Feiock*, 485 U.S. 624, 627 (1988). As the district court explained,

only the final element was at issue, and as to that element, Fenkell failed

meet his burden of proof. A-33 (citing *Lightspeed Media Corp. v. Smith*, 761

F.3d 699, 712 (7th Cir. 2014) ("Where there has been no effort at even partial

compliance with the court's order … the inability-to-pay defense requires a

showing of *complete* inability to pay.") (emphasis added)); *In re Resource*

*Tech. Corp. v. Allied Waste Indus., Inc.*, 624 F.3d 376, 387 (7th Cir. 2010)

([Fenkell] must establish "clearly, *plainly*, and *unmistakably*" that

"compliance is *impossible*.") (internal citation omitted and emphasis in

original).

As the Statement of the Case demonstrates, the evidence is

overwhelming that Fenkell had the means to restore the Alliance ESOP—as

ordered in September 2014 and as Fenkell has refused to do (instead

exercising his "control" over assets technically titled in Mrs. Fenkell's name

to spend $5.5-6.5 million supporting his litigation activities in *Chesemore* and

in Pennsylvania). With this evidence, the district court acted well within its

discretion in holding Fenkell in contempt.

It is of no moment that Fenkell's assets are purportedly "exempt" from

execution. Despite his other judgment-avoidance contentions, Fenkell *agrees*

that "a court's equitable powers allow it to reach assets otherwise protected

by state law." Fenkell Br. at 50; *see* Argument Section II, *infra*. And as of

December 9, 2015, when the district court entered the Agreed Consent Order

proffered by the parties, Fenkell voluntarily *agreed* to post his purportedly exempt assets as security in return for a reduction in the bond he was to post. Dkts. 1131, 1132.

Regardless, none of Fenkell's cases involve contempt proceedings in the court that issued the judgment, as opposed to execution proceedings under state law. Fenkell Br. at 57. And the district court found that any argument that Fenkell's assets were non-exempt or held in a tenancy by the entireties account with his wife was a *"non sequitur."* A-35. As the court explained, "[t]he court is not being asked to execute on exempt assets, nor for that matter, on any assets at all. Rather, the court is being asked to hold Fenkell in contempt for not acting where he has the ability to do so." A-35.[23]  But the bottom line for Fenkell's allegedly exempt assets is that Fenkell chose to pledge these assets in the Agreed Consent Order as partial security for the ESOP restoration order; this issue is now off the table and moot. And unsurprisingly, there is substantial authority that courts may disregard state-law constructs where they would otherwise shield a non-paying contemptor. [24]

---

[23] Fenkell could satisfy the judgment in a number of ways, including posting a bond, obtaining a loan, "liquidat[ing] his retirement accounts", or "agree[ing] with his wife to liquidate either assets titled in her name or other substantial assets held by them in tenancy by the entireties." A-37.

[24] *See S.E.C. v. Huffman*, 996 F.2d 800, 802-03 (5th Cir. 1993) (defendants could not avail themselves of the state law exemption under the Federal Debt Collection

### III.   The Court Can Affirm The District Court's Decision Holding Fenkell in Contempt Through The District Court's Inherent Authority To Enforce Its Own Judgment.

A bedrock principle of American common law is that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also In re Grand Jury Investigation*, 600 F.2d 420, 422 (7th Cir. 1979) ("Embedded in Anglo-American law is the inherent power of the judiciary to coerce obedience to its orders by summarily holding a recalcitrant person … in civil contempt, and then imprisoning him until he complies."). Without the power to enforce compliance with its orders, "the judicial power of the United States would be a mere mockery." *United States v. United Mine Workers*, 330 U.S. 258, 290 n.56 (1947) (internal quote and citation omitted).

Even "Fenkell does not dispute that a federal court has 'inherent power to enforce its judgments.'" Fenkell Br. at 35 (quoting *Peacock*, 516 U.S. at 357); *see also* Fenkell Br. 18 ("[F]ederal courts have inherent power to enforce their judgments.") (citation omitted). Accordingly, none of Fenkell's remaining legal arguments regarding Rule 69 or 70 need be considered. The

---

Practices Act in the face of a disgorgement order); *S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1329, 1334  (S.D. Fla. 2010) (ignoring state law exemptions and holding debtor in contempt where he refused to pay the judgment against him and systematically funneled his assets to accounts in his wife's sole name); *S.E.C. v. Yun*, 208 F. Supp. 2d 1279, 1284 (M.D. Fla. 2002) (explaining that the court would "not be guided by state law where its effect is to make a liable party judgment proof").

district court had the power to enforce its judgment. It did so. And Fenkell agrees that it had the power to do so. It also makes no difference the relief ordered in the judgment is equitable or legal. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-94 (1948) ("We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. … They may also require the payment of money …").

Consistent with these principles, the district court cited to a string of cases affirming the "significant support for use of the court's contempt power to enforce an equitable remedy that requires the payment of money, including in ERISA cases." A-32 (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 876 (7th Cir. 1998) (affirming contempt order in ERISA action where company owner failed to pay employee pension liability payments, without regard to Rule 69 or 70); *Donovan v. Mazzola*, 716 F.2d 1226, 1239 n.9 (9th Cir. 1983) (affirming the lower court's contempt order for the judgment debtor's failure to post a $1 million bond in ERISA breach of fiduciary duty case without cite to Rule 69 or 70); *Usery v. Fisher*, 565 F.2d 137, 139 (10th Cir. 1977); *Hodgson v. Hotard*, 436 F.2d 1110, 1113-14 (5th Cir. 1971); *Solow*, 682 F. Supp. 2d at 1325-26).

46

## IV.   Federal Rule of Civil Procedure 70 Provides An Additional Basis And Authority For Holding Fenkell In Contempt.

While district courts enjoy inherent authority to enforce their judgments, Rule 70 also provides such authority. Rule 70, which "permits a court to find a party in contempt if he fails to honor a court's order," applies here because the Judgment specifically ordered Fenkell to "'restore' certain money wrongfully taken from the Alliance ESOP." A-31, 32 (citing *Stotler*, 870 F.2d at 1164 (non-ERISA case)). This "equitable relief [was] intended to make the fund whole, *without regard* to Fenkell's possible monetary liability to other defendants who had stepped forward to restore other sums under their joint and several liability with Fenkell." A-31 (emphasis added).

Rule 70 provides:

(a) *If a judgment requires a party* to convey land, to deliver a deed or other document, or *to perform any other specific act* and the party fails to comply within the time specified, *the court may order the act to be done*—at the disobedient party's expense …

(e) the court may also hold the disobedient party in contempt.

Fed. R. Civ. P. 70(a), (e) (emphasis added). Rule 70 thus "gives the district court a discrete and limited power to deal with parties who thwart final judgments by refusing to comply with orders to perform specific acts." *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 449 (7th Cir. 2005); *Stotler*, 870 F.2d at 1164 ("Rule 70 permits a court to find a party in contempt if he fails to honor a court's order.").

47

Here, Fenkell was ordered to "perform [the] specific act" of restoring the ESOP, but he refused to do so despite having the means. He was, therefore, properly held in contempt. Fenkell could no more ignore the district court's order that he restore the funding of the ESOP than he could its order removing him as trustee of the Alliance ESOP. *See Stotler*, 870 F.2d at 1164.

Furthermore, though Fenkell mischaracterizes the court's restoration order as a "Monetary Award," the restoration order is enforceable because, as Rule 70 provides, it is part and parcel of a judgment that required Fenkell to perform specific acts. *F.T.C. v. Trudeau*, 579 F.3d 754, 775 (7th Cir. 2009) ("civil contempt is an equitable action"); *Gary W. v. Louisiana*, 622 F.2d 804, 806-07 (5th Cir. 1980) (invoking Rule 70 to compel compliance with money judgment), *cert. denied*, 450 U.S. 994 (1981); *S.E.C. v. Connectajet.com, Inc.*, No. 09-1742, 2015 WL 6437697, at *2 (N.D. Tex. Oct. 16, 2015) (monetary award for "disgorgement and payment of associated interest and civil penalties constitute[d] judgments for specific acts enforceable by contempt sanctions pursuant to Rule 70"); *Entm't Software Ass'n v. Blagojevich*, No. 05C4265, 2006 WL 3692410, at *3 (N.D. Ill. Dec. 3, 2006) (suggesting that Rule 70 may be appropriate to enforce attorneys' fees award where the defendants suggested that they intended to ignore that monetary award); *Emp'rs Ins. of Wausau v. El Banco De Seguros Del Estado*, No. 98-C-0521-C,

48

2003 WL 23109676, at *3 (W.D. Wis. Apr. 23, 2003) (rejecting defendant's attempt to characterize a judgment requiring him to post a letter of credit as an unenforceable money judgment, and instead holding the party in contempt and awarding costs and fees to the opposing party), *aff'd and remanded*, 357 F.3d 666 (7th Cir. 2004); *Preston v. Thompson*, 565 F. Supp. 294, 305 n.19 (N.D. Ill. 1983) (holding that "in proper circumstances a [R]ule 70 order is appropriate to enforce an attorney's fees award against the state").

Beyond this, Fenkell's Rule 70 arguments ignore Rule 70. Rather than look to the actual text and the enforcement of a judge's order, Fenkell points to the relief he says was available in the underlying lawsuit, (1) claiming it was monetary, not equitable, and (2) criticizing the district court's statement that the relief it ordered was contemplated by *Cigna*, 563 U.S. at 421. Fenkell also points to *Montanile v. Bd. of the Nat'l Elevator Indus. Health Benefit Plan*, -- U.S. --, 136 S. Ct. 651 (2016), claiming the award of restoration must be from "particular funds in the defendant's possession." A-24-28. This is so much dissembling.

First, *Cigna* and *Montanile* address how claims are prosecuted on the merits and the types of relief that can be awarded—not how contempt orders are enforced after judgment has been entered or when a contemptor like Fenkell is flouting a judge's order. If Fenkell had a disagreement with the

legal basis of the court's remedies award (rather than just its arithmetic), it behooved Fenkell to raise that issue in his First Appeal. He didn't.

Second, Fenkell was found to be a breaching fiduciary and subject to a host of available ERISA remedies. In *Cigna*, the Court identified these remedies as constructive trusts over assets misappropriated from employee benefit plans, as well as "injunctions, mandamus, and restitution." 536 U.S. at 440; *see also Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 880-81 (7th Cir. 2013) (after *Cigna*, the relief for a breach of fiduciary duty under ERISA § 502(a)(3) is "broader than we have previously held," and "courts have the power to provide equitable relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment").[25] Thus, as the district court explained, "the mere fact that a judgment required payment of money does *not* mean that the relief provided is a legal, as opposed to an equitable remedy." A-31.

In sum, the court's judgment ordering Fenkell to restore $2,044,014.42 to the Alliance ESOP *is* a "specific act" under Rule 70. *See* A-31 ("the court deliberately ordered defendant Fenkell to 'restore' certain money wrongfully taken from the Alliance ESOP"). Fenkell avers that he "did not receive any

---

[25] In contrast, *Montanile* involved the efforts of a plaintiff benefit fund to assert an equitable lien and constructive trust for medical expenses against a *non-fiduciary* pension plan participant who favorably settled an auto accident claim. *See* 136 S. Ct. at 651-56. Self-evidently, *Montanile* had nothing to do with post-judgment enforcement efforts against a breaching fiduciary to whom ERISA remedies provisions applicable to a breaching fiduciary applied.

assets of the ESOP," but that contention goes to liability, something that Fenkell waived by not contesting in his First Appeal.

## V.    Fenkell's Miscellaneous Arguments Are Without Merit.

### A.    The Court Should Reject Fenkell's Argument That A District Court Must Shield A Contemptor From Its Judgment By Abiding State-Law Formalities Regarding Property And Treating The Contemptor's Allegedly Exempt Assets As If The District Court Were Seeking Under State Law To Execute On The Judgment.

Fenkell's core argument glosses over his contemptuous conduct and asserts that the Alliance parties (as judgment creditors) should have been required to initiate enforcement actions in jurisdictions in which Fenkell family assets are kept, where he would immediately assert that most of his assets are purportedly exempt from execution, placed into accounts in his wife's name only, or placed into "tenancies by the entireties" accounts. Fenkell Br. at 34-38. He cites two cases for this proposition, but neither case states that a judgment creditor or a district court is *required* to enforce a judgment via Rule 69. Fenkell Br. at 36 (citing *Thomas, Head, and Greisen Emps. Trust v. Buster*, 95 F.3d 1449 (9th Cir. 1996) (approving district court's exercise of ancillary jurisdiction in supplementary proceedings to enforce judgment in separate case); *LaBarbera v. Audax Constr. Corp.*, 971 F. Supp. 2d 273 (E.D.N.Y. 2013) (enforcing judgment through turnover order and under Fed. R. Civ. P. 69 and New York state law)).

Further, Rule 69 itself states that "[a] money judgment is enforced by a write of execution, *unless the court directs otherwise*." Fed. R. Civ. P. 69(a)(1) (emphasis added). By its very terms, Rule 69 was not the only tool available to the district court in enforcing the judgment. And the district court even called out Fenkell's failure to provide authority requiring limitations on the court's authority to use its contempt power in favor of mandatory resort to Rule 69 enforcement proceedings. *See* A-35 (wherein the district court explained that "[n]oticeably absent from the legal authority cited by Fenkell's counsel is any case holding that a court's equitable powers to require a party to perform an act (albeit one involving payment of funds) are limited to executing on non-exempt assets for purposes of execution on a money judgment."). *See, e.g., Spain v. Mountanos*, 690 F.2d 742, 745 (9th Cir. 1982) (where the state defendant refused to satisfy the judgment, "the district court should not necessarily be reduced to satisfying a judgment through the cumbersome procedure of attempting to execute against state property or bank accounts" and "[i]t may, instead, pursue any remedy provided in Rule 69 or Rule 70 to enforce the award, including ordering state officials to pay the claim.").

There are also strong policy reasons for rejecting Fenkell's mandatory Rule 69 approach. The perverse consequence of adding barriers to the judgment's enforcement would be to assist Fenkell—the adjudged ERISA

violator—by giving him more opportunities and tools to frustrate the district court's judgment. If Fenkell's Rule 69 contentions were accepted, Fenkell could re-raise defenses rejected by the district court in foreign-jurisdiction enforcement proceedings before courts which cannot exercise the contempt power for his failure to obey the court's orders in this case. The end result of Fenkell's Rule 69 approach would be: (1) to tie up the ESOP in additional years of litigation regarding Fenkell's failure to restore it; (2) expose the ESOP to potential outcomes at variance with the district court court's rulings here; and (3) require the ESOP to wait even longer on the decisions of foreign jurisdiction courts, in addition to the years that have already passed since the district court entered its judgment in September 2014.

B.      Fenkell's Due Process Rights Were Not Impinged In Any Way.

Fenkell repeatedly argues that he was not given "due process" in the contempt proceedings. This is nonsense. Fenkell was given every opportunity to state his defenses and to testify. And the district court's rulings against him were supported by "clear and convincing evidence." A-36. *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) (comparing criminal contempt proceedings, which demand "the protections that the Constitution requires of criminal proceedings;" to impose civil contempt, the proof "need only be clear and convincing")

The district court bent over backwards to provide Fenkell all process due him under the law. On August 14, 2015, the Alliance parties filed their Motion to Enforce the Judgment, for a Constructive Trust, Temporary Restraining Order and Injunction Freezing Fenkell Assets, and for Attorneys' Fees pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g). Included in the Alliance parties' motion was a request that the court order Fenkell to show cause why he should not be held in contempt. Dkt. 1066 at 23-25. On August 17, 2015, the court set a deadline of August 21, 2015, for Fenkell to respond to the Alliance parties' motion. Dkt. 1076.

On August 17, 2015, Fenkell filed a motion for an extension of time to file his opposition, which was granted by the court, and he opposed the Alliance parties' motion on August 24. Dkts. 1077, 1078, 1081. On August 25, 2015, the court set a telephonic status conference to occur on August 26, 2015. After Fenkell's counsel informed the court that he would not be able to attend, the court cancelled the hearing, stating it would "reschedule [it] if necessary." Dkt. 1084.

On August 28, 2015, the court entered an Order requiring Fenkell to restore $2,044,014.42 to the Alliance ESOP by September 4, 2015 or appear at a hearing on September 10, 2015 to show cause why he should not be held contempt of court. A-25. Fenkell thereafter filed a Motion for Reconsideration

of that Order on September 4, 2015. Dkt. 1095.[26] Fenkell failed to restore

$2,044,014.42 to the Alliance ESOP prior to September 10, 2015.

The court held the contempt hearing September 10. SA-7. The court

heard a day of testimony from Fenkell and heard argument from all parties.

*Id.* Fenkell entered numerous exhibits into evidence. The court gave Fenkell

leave to file a post-hearing brief after the hearing, which he filed after being

granted an extension of time. Dkt. 1105. In total, the district court considered

six briefs by Fenkell on the merits of the contempt proceedings. *See* Dkts.

1081, 1095, 1107, 1108, 1123, 1141. Fenkell was given every opportunity to

be heard and to oppose the Alliance parties' request that he be held in

contempt.

Finally, Fenkell's argument that the district court allegedly ran

roughshod over his alleged rights to have his exempt property evaluated

under Wisconsin law (which means the ESOP has no contempt remedy

because the district court issued a "Monetary Award" (Fenkell Br. at 41-42)),

or with his marital property in Pennsylvania (*id.* at 43-49) are also without

merit. First, Fenkell has now voluntarily committed assets he claimed were

exempt as security in his First Appeal. *See supra* at Statement of the Case,

Section VII and *infra* at Argument, Section V.D. Second, Fenkell

---

[26] The judgment creditors opposed Fenkell's motion (Dkt. 1095) on September 9, 2015. Dkt. 1097.

misrepresents when he states that the district court required him to use exempt assets or assets held in tenancy in the entirety to satisfy the judgment. "The court is not being asked to execute on exempt assets, nor for that matter on any assets at all. Rather, the court is being asked to hold Fenkell in contempt for not acting where he has the ability to do so …. How he wishes to comply is a decision that remains in David Fenkell's hands." A-35, A-37.

### C.    The District Court's Orders On The Motions To Compel[27] And Awarding Attorneys' Fees Should Be Upheld.

The district court held that Fenkell's objections to post-judgment discovery had "no reasonable basis." A-5. Indeed, while Fenkell again argues that the judgment creditors are not successors in interest to the Judgment (Fenkell Br. at 64-65), the court stated that it "need *not* find that the assignment [made by the Trachte trustees] is permissible to decide the present motion, because part of the court's judgment orders Fenkell to restore to nominal defendant Alliance ESOP over $2 million[.]" A-3 (emphasis added). Further, "Alliance Holdings, Inc., as the administrator of the Plan, also has a sound basis for seeking post-judgment discovery." *Id.* This ruling was not an abuse of discretion.

---

[27] As discussed, Fenkell states that he is appealing the order denying plaintiffs' and the judgment creditors' motion to compel his post-judgment deposition testimony, but any challenge is waived. *See supra* n.3 (quoting *Duncan*, 166 F.3d at 934).

Next, Fenkell takes issue with the fact that the district court allowed
post-judgment discovery touching on Karen Fenkell's assets, arguing that the
judgment creditors "failed to issue a *subpoena duces tecum* on Mrs. Fenkell."
A-67. First, this statement misrepresents what happened. The judgment
creditors *did* serve a post-judgment subpoena on Mrs. Fenkell and took two
post-judgment depositions pursuant to that subpoena on April 23, 2015, and
July 29, 2015. Dkts. 1071, 1072.

Moreover, the court properly allowed the discovery about which Fenkell
complains (i.e., the Fenkells' joint assets). Rule 69(a)(2) allows discovery from
"any person," and case law explains that "discovery into a third-party's assets
is allowed 'where the relationship between the judgment debtor and the
[third-party] is sufficient to raise a reasonable doubt about the *bona fides* of
the transfer of assets between them.'" A-4 (citing *Magnaleasing, Inc. v.
Staten Island Mall*, 76 F.R.D. 559, 561-62 (S.D.N.Y. 1977)). The district court
found that such discovery was particularly relevant here, "given Fenkell's
previous transfer of funds to his wife in an attempt to move assets beyond the
reach of plaintiffs." A-4 (citing SA-1-3).

### D. Fenkell's Appeal Of An Agreed Order To Which He Consented In "Form And Substance" Is Spurious.

As discussed in the Jurisdictional Statement above, this Court does not
have jurisdiction over Fenkell's appeal of the Agreed Consent Order. The

record shows that the district court entered this *agreed* order after multiple submissions by the parties and three separate conferences among the parties and the court. The parties consented to the Order in "Form and Substance" (*see* A-39), with all attorneys and parties (including Fenkell) signing their names to the Collateral Pledge of Assets agreement attached to and incorporated into the Order.

Parties may not agree to the entry of an Order and then argue on appeal that the court abused its discretion in entering it. *See Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 382 (7th Cir. 2009) ("By assenting to the agreed order, ITA waived any right to raise that argument on appeal."). This is especially true where, as here, nothing in the Order reserves a right to appeal. *See Edgar*, 99 F.3d at 262. And because Fenkell *agreed* to pledge assets he had claimed were exempt as security for his appeal in exchange for a reduced bond, Fenkell's arguments that the district court mistreated him with respect to those assets are moot.

## CONCLUSION

For the foregoing reasons, the Court should affirm all orders of the district court from which Fenkell appeals.

Dated: April 15, 2016                    *s/ Charles C. Jackson*

                                                   Charles C. Jackson
                                                   William J. Delany
                                                   Erin E. McAdams

Morgan, Lewis & Bockius LLP
77 W. Wacker Dr., Suite 500
Chicago, Illinois 60601
Telephone: 312.324.1000
Facsimile: 312.324.1001

*Attorneys for Appellees Alliance
Holdings, Inc., A.H.I., Inc., and AH
Transition Corporation*

Lars C. Golumbic
Sarah M. Adams
Groom Law Group
1701 Pennsylvania Avenue N.W.,
Ste. 1200
Washington, DC 20006-0000
202.861.6615

*Attorneys for Appellees Alliance
Holdings, Inc. Employee Stock
Ownership Plan*

## CERTIFICATE OF COMPLIANCE

I, Charles C. Jackson, an attorney, certify that the foregoing Brief of

Defendants-Appellees Alliance Holdings, Inc., A.H.I., Inc., AH Transition

Corporation, and Alliance Holdings, Inc. Employee Stock Ownership Plan

complies with the type-volume limitation prescribed in Fed. R. App. P.

32(a)(7)(B). The Brief contains 13,947 words, excluding the parts of the Brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


*s/ Charles C. Jackson*
Charles C. Jackson

## CERTIFICATE OF SERVICE

I, Charles C. Jackson, an attorney, certify that on April 15, 2016, I

served an electronic version of the foregoing Brief of Defendants-Appellees

Alliance Holdings, Inc., A.H.I., Inc., AH Transition Corporation, and Alliance

Holdings, Inc. Employee Stock Ownership Plan via this Court's Electronic

Case Filing System on the following counsel of record:

R. Joseph Barton
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave NW
West Tower, Suite 500
Washington, DC  20005

David R. Johanson
Hawkins Parnell Thackston
& Young LLP
1776 Second Street
Napa, CA  94559

Lars C. Golumbic
Groom Law Group
1701 Pennsylvania Avenue, N.W.
Suite 1200
Washington, DC  20006

*s/ Charles C. Jackson*
Charles C. Jackson